JACKSON LEWIS LLP
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, New Jersey 07960-6844
(973) 538-6890
ATTORNEYS FOR DEFENDANTS
UNITED WATER NEW JERSEY INC.
(IMPROPERLY PLED AS "HACKENSACK
WATER COMPANY, UNITED WATER
RESOURCES COMPANY, UNITED WATER
RESOURCES COMPANY-NEW JERSEY,
UNITED WATER-SUEZ INC. AND UNITED
WATER INC.") JOHN MENZEL, MIKE LEAHY,
JACK POLK, ROBERT IACULLO, CHARLES
WALL AND ANTHONY HARDING

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JUDE DESTRO AND VIRGINIA DESTRO, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 08-4776 (SRC) |
| | : | |
| -against- | : | |
| | : | |
| HACKENSACK WATER COMPANY, et als., | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## DEFENDANTS' POST-HEARING MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO ENFORCE SETTLEMENT

---

Of Counsel:
Brett M. Anders

On the Brief:
Brett M. Anders
Joseph C. Toris

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY ...............................3

      I.     The December 3, 2010 Mediation. .............................................3

      II.    Post-Negotiation Joint Session with the Parties, their Respective Counsel and the Mediator..........................................4

      III.   Actions Of The Parties Following The December 3, 2010 Mediation That Support The Existence Of An Agreement .........................6

LEGAL ARGUMENT....................................................................................................10

POINT I .........................................................................................................................10

ENFORCEMENT OF THE DECEMBER 3, 201 SETTLEMENT IS PROPER AND WARRANTED. .............................................................................................10

    A.   New Jersey Policy Requires Courts To Enforce Settlement Agreements Whenever Possible. .............................................10

    B.   The United Water Defendants Are Able To Establish The Existence Of A Binding Contract................................................11

        1.   The Parties Reached An Agreement As To The Material Terms Of The Settlement............................................12

        2.   The Parties Agreed To And Effectuated The Entry Of A 60-Day Order of Dismissal To Finalize Settlement Papers. ............15

        3.   The Absence Of A Fully Executed Written Settlement Agreement Does Not Prevent Enforcement Of The December 3, 2010 Settlement. ....................................16

    C.   There Is No Compelling Circumstance Warranting Rescission And Defendants Will Suffer Great Prejudice If Enforcement Is Not Mandated............18

CONCLUSION..............................................................................................................19

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

Excelsior Ins. Co. v. Pennsburg Pain Center,
    975 F. Supp. 342 (D.N.J. 1996) ..................................................................10

Good v. Pennsylvania Railroad Co.,
    384 F.2d 989 (3d Cir. 1967).......................................................................18

In re Days Inn Worldwide, Inc. v. Shaikh, 2010 U.S. Dist. LEXIS 94036 (D.N.J. August
    20, 2010) (Attached hereto as Exhibit A) .................................................10

U.S. v. Lightman,
    988 F. Supp. 448 (D.N.J. 1997) ...........................................................11, 18

**OTHER CASES**

Amatuzzo v. Kozmiuk,
    305 N.J. Super. 469 (App. Div. 1997) ......................................................11

Bistricer v. Bistricer,
    231 N.J. Super. 143 (Ch. Div. 1987) ........................................................17

Comerata v. Chaumont, Inc.,
    52 N.J. Super. 299 (App. Div. 1958) ........................................................17

Dept. of Pub. Advocate v. N.J. Bd. of Pub. Utilities,
    206 N.J. Super. 523 (App. Div. 1985) ......................................................10

Graziano v. Grant,
    326 N.J. Super. 328 (App. Div. 1999) ......................................................11

Honeywell v. Bubb,
    130 N.J. Super. 130 (App. Div. 1974) ......................................................10

Jannarone v. W.T. Co.,
    65 N.J. Super. 472 (App. Div.), certif. denied, 35 N.J. 61 (1961)............10

Lahue v. Pio Costa,
    263 N.J. Super. 575 (App. Div. 1993) ......................................................10

Nolan v. Lee Ho,
    120 N.J. 465 (1990) ..................................................................................................11, 18

Pascarella v. Bruck,
    190 N.J. Super. 118 (App. Div.), certif. denied, 94 N.J. 600 (1983)................................10, 19

OTHER: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

Civ. R. 41.1(b) ..................................................................................................................2, 6, 8, 15

## PRELIMINARY STATEMENT

Defendants United Water New Jersey Inc. (improperly pled as "Hackensack Water Company, United Water Resources Company, United Water Resources Company-New Jersey, United Water-Suez Inc. and United Water Inc.") ("United Water" or the "Company"), John Menzel, Mike Leahy, Jack Polk, Robert Iacullo, Charles Wall and Anthony Harding (collectively, "United Water Defendants") submit this post-hearing brief in connection with their motion to enforce the settlement reached between the United Water Defendants and Plaintiffs Jude Destro ("Destro") and Virginia Destro (collectively, "Plaintiffs") during a mediation held on December 3, 2010.

At the December 3, 2010 mediation, the parties reached a settlement and agreed to the essential terms of a resolution of the claims Plaintiffs brought against the United Water Defendants arising from Destro's employment with the Company.  The terms of the settlement agreed to by the parties were as follows:

(i)     Destro would retire from United Water effective April 1, 2011;

(ii)    at the time of his retirement, United Water would credit Destro with two (2) additional years of service and pay him an amount equivalent to the additional pension benefit he would have received had he worked the additional two years prior to retirement;

(iii)   United Water would make a cash payment to Plaintiffs in the amount of $225,000.00; and

(iv)    Destro would remain out of work on a paid leave status until his retirement on April 1, 2011.

Despite the verbal agreement to settle the case, the preparation of a proposed settlement agreement (the terms of which were never objected to as being inconsistent with what was agreed to at the close of the mediation), and the entry of a 60-day order of dismissal

pursuant to L. Civ. R. 41.1(b) to allow the parties time to finalize the necessary paperwork memorializing the settlement, Plaintiffs' current position is that there never was a settlement. Plaintiffs' position, however, is wholly inconsistent with their representations during the mediation as well as their conduct following the mediation.

Moreover, Plaintiffs allegation that they manifested their position that there was "no settlement" during the final joint session at the mediation is not only inconsistent with their conduct, but, more significantly, it is inconsistent with the sworn testimony of Veronica Blake-Greenaway ("Blake-Greenaway"), the mediator at the December 3, 2010 session. As a neutral mediator, Blake-Greenaway has no interest in the outcome of this litigation. Blake-Greenaway testified – in no uncertain terms – that the parties reached a settlement at the conclusion of the mediation. While she did not recall the specific terms of the agreement, Blake-Greenaway's recollection of the events surrounding the mediation was identical to that of the representatives of the United Water Defendants present at the mediation – that is, Blake-Greenaway was unwavering in her position that the parties reached a settlement at the conclusion of mediation.

Plaintiffs have offered no evidence other than their own self-serving statements to support their argument the December 3, 2010 mediation did not result in an agreement to settle this matter. In stark contrast, the overwhelming evidence – including the testimony of the only neutral participant in the mediation as well as the parties' joint letter to the Court advising of the settlement – support a finding that the parties entered into a binding and enforceable agreement to resolve Plaintiffs' claims against the United Water Defendants. As set forth more fully below, Plaintiffs' case of "buyer's remorse" does not provide a basis for them to escape their obligations under the settlement reached on December 3, 2010. Therefore, the United Water Defendants respectfully request that the Court enforce the settlement between the parties.

## STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

**I.** **The December 3, 2010 Mediation**

On December 3, 2010, Plaintiffs and the United Water Defendants participated in a voluntary and private mediation before Mediator Blake-Greenaway. (See Exhibit K of the Certification of Brett M. Anders ("Anders Cert"), Transcript of September 26, 2012 Proceedings before the Honorable Joseph A. Dickson ("Dickson Tr."), page 5, lines 22-24.[1]) The mediation session lasted for over seven hours. (Anders Cert., Exhibit K, Dickson Tr. 7:4-10.) During the course of the mediation, the parties discussed the potential terms for resolution of this litigation. (Anders Cert., Exhibit K, Dickson Tr. 6:24-7:3.) This included a cash payment to Plaintiffs, providing Destro with credit for additional years toward his pension, and requiring Destro to remain out of work[2] until his retirement on a date certain. Specifically, the parties agreed to the following terms during the negotiations:

    (i)    Destro would retire from United Water effective April 1, 2011;

    (ii)    at the time of his retirement, United Water would credit Destro with two (2) additional years of service and pay him an amount equivalent to the additional pension benefit he would have received had he worked the additional two years prior to his retirement;

    (iii)    United Water would make a cash payment to Plaintiffs in the amount of $225,000.00; and

    (iv)    Destro would remain out of work on a paid leave status until his retirement on April 1, 2011.

(See Anders Cert. Exhibit G, Transcript of June 21, 2011 Evidentiary Hearing before the Honorable Stanley R. Chesler ("Chesler Tr."), 7:9-8:6; 65:9-66:3; 45:21-46:6.) Although the monetary component of the settlement is significant (i.e., $225,000.00), the amount of the

---

[1] Hereinafter, references to transcripts shall be provided in the following format: PAGE:LINE. For example, references to the Dickson Tr. Page 15, lines 6 through 12 shall be denoted, "Dickson Tr. 15:6-12."

[2] Destro was on a leave of absence at the time of the mediation.

settlement is not a reflection of the merits of Plaintiffs' claims.  Rather, United Water arrived at the amount of the settlement based, in part, on Destro's testimony during discovery that he and his wife had taken out a $200,000.00 mortgage on their home in order to pay for their attorneys' fees in this litigation and that the mortgage obligation was the primary obstacle to Destro's ability to retire.  (Anders Cert., Exhibit G, Chesler Tr. 10:21-11:14; Exhibit N, Relevant Portions of the Transcript of the July 8, 2010 Deposition of Jude Destro ("Destro II Tr.") 298:24-300:25; 469:11-471:19.)  Therefore, in that Destro's retirement was an important and valuable aspect of the settlement to the United Water Defendants, the amount of the cash payment was a reflection of what it would take for Destro to retire and leave the Company, not a reflection of the strength of his claims.

## II.   Post-Negotiation Joint Session with the Parties, their Respective Counsel and the Mediator

At the end of the mediation session, Plaintiffs, the United Water Defendants, and their respective counsel, met in a joint session with Mediator Blake-Greenaway who advised that a settlement had been reached and reviewed the terms (set forth above) with the parties.  (Anders Cert., Exhibit K, Dickson Tr. 7:11-13; Exhibit G, Chesler Tr. 47:2-15; 52:23-53:24; 65:18-66:3.)  During this joint session, Plaintiffs' counsel requested that the settlement amount be "grossed up" to avoid a potential negative tax impact to his clients.  (Anders Cert., Exhibit G, Chesler Tr. 8:19-10:20; 46:12-47:4; 66:4-69:1.)  The United Water Defendants rejected this request.  (Id.)  In addition, in-house counsel for United Water advised Plaintiffs that the approximate value of the two year's credit toward Jude Destro's pension was worth approximately $500.00 per month.  (Anders Cert., Exhibit G, Chesler Tr. 9:20-10:17; 46:23-47:1; Exhibit I, Transcript of April 4, 2012 Deposition of Jude Destro ("Jude Destro Tr.") 8:5-16.)  The parties agreed Plaintiffs would meet with a representative of United Water's Benefits Department in the near future to review

the available payment options under the pension plan and the precise amount of the payout based on the option they chose.  (Anders Cert., Exhibit G, Chesler Tr. 8:19-10:20; 46:12-47:4; 66:4-69:1.)  The parties also discussed Destro's actual retirement date and the allocation of the settlement amount, agreeing that $25,000.00 would be allocated as W-2 wages with the balance as a 1099 payment for alleged pain and suffering.  (Id.)

After these issues had been discussed, Mediator Blake-Greenaway suggested a written memorialization of the parties' agreement while everyone was together.  (Anders Cert., Exhibit K, Dickson Tr. 9:5-7; Exhibit G, Chesler Tr. 11:20-12:7; 69:10-20.)  Due to the late hour as well as prior commitments, Plaintiffs' counsel stated that there was no need to memorialize the agreement at that time as the parties all trusted one another.  (Anders Cert., Exhibit K, Dickson Tr. 9:13-14.)  Contrary to Plaintiffs' current assertions, at no point during the joint session did Plaintiffs or their counsel state there was no deal or give any other indication that a settlement had not been reached.  (Anders Cert., Exhibit K, Dickson Tr. 9:19-10:6; 20:20-25; 25:9-17; Exhibit G, Chesler Tr. 12:24-13:1; 69:2:9; 91:17-92:7; Exhibit H, Transcript of April 4, 2012 Deposition of Richard S. Mazawey ("Mazawey Tr.") 26:14-25.)

Moreover, the actions of the parties immediately following the mediation demonstrate that an agreement had been reached at the conclusion of the mediation session on December 3, 2010.  For example, Plaintiffs' counsel approached counsel for the United Water Defendants as the parties were leaving the joint session to discuss contacting the Court to advise of the settlement.  (Anders Cert., Exhibit G, Chesler Tr. 69:21-70:8.)  Following the mediation, James M. Terranova, in-house counsel for United Water contacted United Water's General Counsel to advise him of the settlement and sent an e-mail to key United Water individuals regarding the resolution of the matter.  (Anders Cert., Exhibit G, Chesler Tr. 14:16-15:5.)

5

Tiffani Shannon, the representative of United Water's insurance carrier who attended the mediation, also contacted her supervisor to advise the matter had been resolved. (Anders Cert., Exhibit G, Chesler Tr. 48:3-10.) These actions would not have taken place if there was no settlement.

**III.   Actions Of The Parties Following The December 3, 2010 Mediation That Support The Existence Of An Agreement.**

In the weeks following the mediation, the parties continued to act in accordance with the existence of an agreement to settle Plaintiffs' claims against the United Water Defendants. For example, on or about December 9, 2010, Mediator Blake-Greenaway sent an e-mail to counsel for the Plaintiffs and the United Water Defendants that read: "Dear Messrs. Anders and Mazawey: Attached is the invoice with the balance due for the above referenced mediation. **Thank you for the opportunity to assist you in the resolution of this matter**. Best regards, Veronica Blake-Greenaway." (Emphasis supplied) (Anders Cert. at Exhibit A; Anders Cert., Exhibit G, Chesler Tr. 71:3-10; Dickson Tr. 10:7-11:9.) Blake-Greenaway testified she would not have written the sentence, "[t]hank you for the opportunity to assist you in the resolution of this matter[,]" if the matter had not been settled. (Anders Cert., Exhibit K, Dickson Tr. 11:17-12:6.) Plaintiffs' counsel did not contact Blake-Greenaway after receiving the e-mail to advise that the statement in her email was incorrect. (Anders Cert., Exhibit K, Dickson Tr. 12:7-12.) Likewise, no further mediation sessions or negotiations were held with Blake-Greenaway following December 3, 2010. (Anders Cert., Exhibit K, Dickson Tr. 12:13-20.)

On or about December 16, 2010, counsel for the United Water Defendants spoke to Plaintiffs' counsel regarding sending a letter to the Court to advise of the settlement and request the entry of a 60-day order of dismissal pursuant to L. Civ. R. 41.1(b). (Anders Cert., Exhibit G, Chesler Tr. 71:19-72:8.) Mr. Anders testified that at no point during this conversation

did Plaintiffs' counsel, Mr. Mazawey, state that there was no settlement or that there was any uncertainty regarding the parties' agreement. (Anders Cert., Exhibit G, Chesler Tr. 72:9-17.) While Mr. Mazawey now disputes the existence of a settlement, he testified that he agreed to the entry of a 60-day dismissal order. (Anders Cert., Exhibit H, Mazawey Tr. 36:3-37:6.)

On or about December 17, 2010, the parties submitted a letter jointly advising the Court that a settlement had been reached in the above matter and requested a 60-day dismissal order be entered while the parties prepared the paperwork necessary to memorialize the settlement reached on December 3, 2010. (Anders Cert., Exhibit B.) The letter to the Court specifically states:

> **On behalf of the United Water Defendants and Plaintiff, we write to advise the Court that the parties were able to amicably resolve their differences in this matter.** Therefore, both the United Water Defendants and Plaintiffs respectfully request that, pursuant to <u>L. Civ. R.</u> 41.1(b), the Court enter a 60-day dismissal order while the parties prepare the paperwork necessary to terminate the case.

(<u>Id.</u>) (Emphasis added.) Thereafter, on December 29, 2010, the United Water Defendants' counsel forwarded to Plaintiffs' counsel a proposed settlement agreement which memorialized the terms agreed to during the December 3, 2010 mediation. (Anders Cert., Exhibit D.)

On or about December 30, 2010, Mr. Anders spoke with Mr. Mazawey to discuss the proposed settlement agreement, specifically, the timing of the payment of the settlement proceeds. (Anders Cert., Exhibit G, Chesler Tr. 80:2-12.) At no time during this conversation did Plaintiffs' counsel advise that the terms set forth in the proposed agreement were inconsistent with what had been agreed to by the parties. (Anders Cert., Exhibit G, Chesler Tr. 98:17-25.) Again, while Mr. Mazawey now disputes the fact that an agreement was reached, he testified that

he discussed the timing and allocation of the settlement amount with Mr. Anders during the call. (Anders Cert., Exhibit H, Mazawey Tr. 33:21-34:5.)

On or about December 30, 2010, Plaintiffs' counsel sent a letter to the United Water Defendants' counsel advising that he had forwarded the draft settlement agreement to his clients for review and requesting a meeting with United Water's Benefits Department to review Destro's retirement options "*with regard to the settlement in the above matter*." (Anders Cert., Exhibit E) (emphasis added).

On or about December 31, 2010, Mr. Anders spoke to Mr. Mazawey about Destro's intent to return to work on January 3, 2011 and how that was inconsistent with the settlement reached by the parties. (Anders Cert., Exhibit G, Chesler Tr. 99:7-23.) During this call, Mr. Mazawey did not indicate that a settlement had not been reached. (Anders Cert., Exhibit G, Chesler Tr. 99:24-100:1; 105:24-106:3.)

On January 3, 2011, the Honorable Stanley R. Chesler entered an order dismissing this matter pursuant to L. Civ. R. 41.1(b) – a rule which applies only when a settlement has been reached. (Anders Cert., Exhibit C.) At no time prior to the entry of this order did Mr. Mazawey contact the Court to advise the matter had not settled or that the parties' joint letter advising the Court of the settlement was sent in error. (Anders Cert., Exhibit H, Mazawey Tr. 40:20-25.)

Thereafter, on January 6, 2011, a meeting was held at United Water between Plaintiffs, United Water and their respective counsel. The purpose of the meeting was for a member of United Water's Benefits Department to explain to the Plaintiffs the various pension payment options available to Destro upon his retirement and, depending on which payment option he chose, the approximate value of the enhanced payment based on Destro being credited

8

with the agreed upon additional two years of service. (Anders Cert., Exhibit G, Chesler Tr. 16:7-17:8.)  After this information was provided to Plaintiffs they met privately with their counsel. Immediately thereafter, counsel for the parties met and, for the first time, Plaintiffs' counsel advised counsel for the United Water Defendants that his clients were not willing to settle the matter. (Anders Cert., Exhibit G, Chesler Tr. 19:22-21:4.)

On or about February 24, 2011, the United Water Defendants filed a motion to enforce the settlement reached at the December 3, 2010 settlement conference.  On June 21, 2011, the Honorable Stanley R. Chesler held an evidentiary hearing with respect to the motion. At the evidentiary hearing, Judge Chesler observed that a motion to enforce a settlement is treated as if it were a motion for summary judgment in that if there is a contested issue of material fact, the matter will proceed to trial. (Anders Cert., Exhibit G, Chesler Tr. 3:25 – 4:3.) Judge Chesler further noted that a settlement is a contract and the issue before the Court was whether or not an oral contract to settle the matter had been formed.  (Anders Cert., Exhibit G, Chesler Tr. 4:3-5.)   After hearing from some, but not all, of the witnesses, Judge Chesler concluded that there was a material question of fact as to whether an oral contract to settle the matter had been formed.[3] (Anders Cert., Exhibit G, Chesler Tr. 129:5-18.)  At that point, Judge Chesler terminated the hearing and granted the United Water Defendants leave to file an amended answer which included the defense of settlement.  (Id.)  Judge Chesler then advised that he would bifurcate the proceeding and a trial would be held on the defense of settlement. (Anders Cert., Exhibit L.)

---

3 While Plaintiffs have raised a number of other issues in opposition to Defendants' motion to enforce the settlement (e.g. application of the twenty-one day consideration period in the written settlement agreement), those issues are not before the Court.  Rather, the sole issue before this Court as determined by Judge Chesler is whether an *oral* contract to settle the matter had been formed.  However, to the extent the Court finds it necessary to consider arguments unrelated to the factual issue of whether or not an oral contract to settle this matter was reached at the December 3, 2010 mediation, the United Water Defendants rely upon the arguments set forth in their prior briefs in support of the motion to enforce settlement.

Following this hearing, limited discovery was taken on the issue of whether an oral contract to settle the matter was formed at the December 3, 2010 mediation.  This additional discovery was limited to a brief deposition of Plaintiffs and their counsel, Mr. Mazawey.  In addition, on September 26, 2012, the Court heard sworn testimony from Mediator Blake-Greenaway, who confirmed that a settlement had, in fact, been reached during the mediation.

At the Court's request, the United Water Defendants submit this memorandum which summarizes their position – along with appropriate citations to the record – as to why a binding oral contract to settle the matter was created on December 3, 2010.

## LEGAL ARGUMENT

### POINT I

### ENFORCEMENT OF THE DECEMBER 3, 2010 SETTLEMENT IS PROPER AND WARRANTED

A.   **New Jersey Public Policy Requires Courts To Enforce Settlement Agreements Whenever Possible.**

An agreement to settle a lawsuit is a contract.  Pascarella v. Bruck, 190 N.J. Super. 118 (App. Div.), certif. denied, 94 N.J. 600 (1983).  When faced with a settlement, absent a demonstration of "fraud or other compelling circumstances," a court, as with all contracts, should honor and enforce its terms.  Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974).  Moreover, given New Jersey's[4] "strong public policy in favor of settlements," courts are instructed to "strain to give effect to the terms of a settlement wherever possible."  Dept. of Pub. Advocate v. N.J. Bd. of Pub. Utilities, 206 N.J. Super. 523, 528 (App. Div. 1985); Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div.), certif. denied, 35 N.J. 61 (1961); Lahue v. Pio

---

[4] State law governs the enforcement of settlement agreements in federal court.  See In re Days Inn Worldwide, Inc. v. Shaikh, 2010 U.S. Dist. LEXIS 94036, *6 (D.N.J. August 20, 2010) (Attached hereto as Exhibit A); Excelsior Ins. Co. v. Pennsburg Pain Center, 975 F. Supp. 342, 349 (D.N.J. 1996).

Costa, 263 N.J. Super. 575, 596 (App. Div. 1993) ("it is, moreover, fundamental that 'settlement of litigation ranks high in the public policy' of New Jersey").   Accordingly, the December 3, 2010 settlement agreement should be enforced.  Plaintiffs have presented no credible evidence supporting their claim that a settlement was not reached during the mediation on December 3, 2010.  To the contrary, the mediator – the only neutral party at the mediation and the only person without a vested interest in the outcome of the matter – was unwavering in her testimony that a settlement had been reached.   Moreover, the parties' actions following the mediation overwhelmingly support the United Water Defendants' position that the matter was settled.

**B.**     <u>**The United Water Defendants Are Able To Establish The Existence Of A Binding Contract.**</u>

        The initial burden rests on the party seeking to enforce the settlement – in this case, the United Water Defendants – to prove the existence of a contract.  <u>Amatuzzo v. Kozmiuk</u>, 305 N.J. Super. 469, 474 (App. Div. 1997).  However, if a contract is established, the burden shifts to the party seeking to negate its enforcement – in this case, Plaintiffs – by establishing the existence of compelling circumstances. <u>Id.</u>; <u>see also</u> <u>Nolan v. Lee Ho</u>, 120 N.J. 465, 472 (1990). Here, the United Water Defendants are able to establish the existence of a contract, while Plaintiffs are unable to meet their burden as they cannot demonstrate the existence of any compelling circumstances to void the contract.

        A contract is formed where there is an offer, acceptance, and terms sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty.  <u>Graziano v. Grant</u>, 326 N.J. Super. 328, 339 (App. Div. 1999) (<u>citing</u> <u>Weichert Co. Realtors v. Ryan</u>, 128 N.J. 427, 435 (1992)).  The contract is enforceable if the parties agree on essential terms, and manifest an intention to be bound by those terms. <u>Id.</u> at 340; <u>see also</u> <u>U.S. v. Lightman</u>, 988 F. Supp. 448, 458 (D.N.J. 1997).

1.   **The Parties Reached An Agreement As To The Material Terms Of The Settlement.**

Here, all of the elements of an enforceable contract are present. During the course of the mediation of December 3, 2010, several offers and counteroffers were made by the parties. (Anders Cert., Exhibit K, Dickson Tr. 6:24-7:3.) At the end of the day, however, the United Water Defendants made a final offer to Plaintiffs. The terms of this offer were clear. First, Destro would retire and begin collecting his pension. (Anders Cert., Exhibit G, Chesler Tr. 7:9-8:6; 65:9-66:3; 45:21-46:6.) Second, United Water would credit Destro with two (2) additional years of service and pay him an amount equivalent to the additional pension benefit he would have received had he worked an additional two years. (Id.) Third, United Water would make a cash payment to Plaintiffs in the amount of $225,000.00. (Id.) Fourth, Destro would continue to remain out of work (with pay) until his retirement. (Id.) These terms were agreed to by the parties during a final joint session with the mediator, during which the mediator reviewed the terms of the settlement and confirmed with the parties that an agreement had been reached. (Anders Cert., Exhibit K, Dickson Tr. 7:11-17; Exhibit G, Chesler Tr. 47:2-15; 52:23-53:24; 65:18-66:3.)

In fact, during this final joint session, the specific date of Destro's retirement was discussed and the parties agreed on April 1, 2011 as this was the earliest possible date Destro could retire after turning age 60. (Anders Cert., Exhibit G, Chesler Tr. 8:19-10:20; 46:12-47:4; 66:4-69:1.) In addition, the parties discussed what portion of the settlement proceeds would be allocated to wages and which portion would be allocated to non-wage income. (Id.) On this point, it was agreed that $25,000.00 of the $225,000.00 cash payment would be allocated to wages. (Id.) Plaintiffs also requested that the settlement amount be "grossed up" to account for

any potential negative tax consequences. (Anders Cert., Exhibit G, Chesler Tr. 8:19-10:20; 46:12-47:4; 66:4-69:1.)   The United Water Defendants rejected this demand and Plaintiffs ultimately agreed there would be no gross up of the settlement amount. (Id.)   As to the "enhanced pension benefit," during the mediation the United Water Defendants provided an estimate to Plaintiffs that the enhanced benefit would be worth approximately $500.00 per month. (Anders Cert., Exhibit G, Chesler Tr. 9:20-10:17; 46:23-47:1; Exhibit I, Jude Destro Tr. 5-16.)   This estimate was consistent with the numbers later provided to Plaintiffs by United Water's Benefits Department during the January 6, 2011 meeting. (Anders Cert., Exhibit F.)

While Plaintiffs argue that no agreement was reached during the mediation, they do agree with the United Water Defendants as to the terms of the settlement that were discussed during the final joint session at the mediation.   For example, Mr. Mazawey agrees the United Water Defendants offered $225,000.00 as the monetary component of the settlement. (Anders Cert., Exhibit H, Mazawey Tr. 6:2-14.)   Both Jude and Virginia Destro also agree that the United Water Defendants offered this amount.   (Anders Cert., Exhibit I, Jude Destro 5:8-14; Anders Cert., Exhibit J, Transcript of April 4, 2012 Deposition of Virginia Destro ("Virginia Destro Tr.") 15:21-16:2.)   Mr. Mazawey also acknowledged that a two-year pension enhancement was discussed.   (Anders Cert., Exhibit H, Mazawey Tr. 15:21-16:8.)   Similarly, Destro agrees that United Water provided the approximate value of the pension credit at the December 3, 2010 mediation and that the approximate value was $500.00 per month. (Anders Cert., Exhibit I, Jude Destro Tr. 8:5-16.)

Significantly, at the conclusion of the mediation session on December 3, 2010, the parties did not schedule any additional mediation sessions, thereby demonstrating that the parties were of like mind that an agreement had been reached and the matter had been resolved.

(Anders Cert., Exhibit K, Dickson Tr. 12:13-20.)  Indeed, if either party (or the mediator for that matter) believed that a settlement had not been reached, the mediation would have been continued – not concluded.

Again, while Plaintiffs now claim to have a different version of the discussions at this joint session, Mediator Blake-Greenaway – an individual who has no stake in the outcome of the litigation – is unequivocal that a settlement of the matter had been reached.  (Anders Cert., Exhibit K, Dickson Tr. 12:21-25)  Further, Mediator Blake-Greenaway's recollection of the events during this final joint session was wholly consistent with that of the United Water Defendants.  For example, the purpose of the meeting in the joint session was to go over the settlement that had been reached by the parties. (Anders Cert., Exhibit K, Dickson Tr. 7:11-13.)  While Mediator Blake-Greenaway did not recall the specific terms of the settlement, she described them as "definitive."  (Anders Cert., Exhibit K, Dickson Tr. 14:19-25.)  Mediator Blake-Greenaway also testified that during the final joint session she asked if the parties wanted to commit the agreement to writing, even if in outline form.  (Anders Cert., Exhibit K, Dickson Tr. 9:5-7.)  Not surprisingly, she testified would not have done this if an agreement to settle the matter had not been reached.  (Anders Cert., Exhibit K, Dickson Tr. 9:15-18.)  When the representative from United Water indicated he had a prior engagement that evening and a time conflict, Mediator Blake-Greenaway testified that Mr. Mazawey stated it was not necessary to memorialize the agreement at that time because the parties "all trust one another." (Anders Cert., Exhibit K, Dickson Tr. 9:8-14.)

Consistent with the testimony of the United Water Defendants and their representatives, Mediator Blake-Greenaway testified that neither Plaintiffs nor their counsel gave any indication at the mediation that there was "no deal" or that any additional negotiations were

14

required.  (Anders Cert., Exhibit K, Dickson Tr. 8:15-17; 9:19-10:6; 20:20-25; 25:9-17.)  Indeed, after the joint session on December 3, 2010, Blake-Greenaway did not participate in any additional negotiations or teleconferences with the parties.  (Anders Cert., Exhibit K, Dickson Tr. 12:13-20.)

Further, on December 9, 2010, Mediator Blake-Greenaway sent an e-mail to both Mr. Mazawey and Mr. Anders which read in part, "[t]hank you for the opportunity to assist you in the resolution of this matter[,]" (Anders Cert., Exhibit A.)  Mediator Blake-Greenaway testified she would not have phrased the correspondence in this matter if a settlement had not been reached at the December 3, 2010 mediation.  (Anders Cert., Exhibit K, Dickson Tr. 11:17-12:6.)  At no point after receiving this e-mail did Mr. Mazawey contact Mediator Blake-Greenaway to advise her that she was incorrect or that the matter had not been resolved.  (Anders Cert., Exhibit K, Dickson Tr. 12:7-12.)

Contrary to Plaintiffs' argument, Mediator Blake-Greenaway's testimony is not "lay opinion testimony" under Fed. R. Evid. 701.  Rather, Blake-Greenaway testified as to the facts concerning her involvement as the neutral mediator during the December 3, 2010 mediation.  As set forth above, Blake-Greenaway's testimony is consistent with that of the United Water Defendants' witnesses concerning the key events at the mediation session, namely: (1) that the parties reached an agreement to resolve this matter; (2) that at the conclusion of the mediation session, the parties met with Blake-Greenaway to review the terms of the agreement reached between the parties; and (3) no one present at this final joint session expressed in any manner that the terms reviewed by Blake-Greenaway were not agreed to or that the matter was not settled.  The fact Blake-Greenaway did not recall the specific terms of the parties' agreement does not render her testimony ambiguous or unreliable as she testified that the terms of the

agreement were "definitive" and that a settlement had "unequivocally" been reached by the parties at the conclusion of the December 3, 2010 mediation. (Anders Cert., Exhibit K, Dickson Tr. 12:21-25; 14:19-25.)

As the above demonstrates, an offer was made to settle this matter, that offer was accepted, and terms of the agreement were sufficiently definite.

**2.      The Parties Agreed To And Effectuated The Entry Of A 60-Day Order of Dismissal To Finalize Settlement Papers.**

Further supporting the United Water Defendants' position that a settlement had been reached by the parties is the fact that, in connection with the settlement, the parties jointly requested the entry of a 60-day order of dismissal by the Court pursuant to L. Civ. R. 41.1(b) to allow the parties an opportunity to finalize the paperwork necessary to memorialize the settlement agreement. (See Anders Aff. at Exhibit A.) By its very terms, the application of L. Civ. R. 41.1(b) is limited to cases which have been settled, but where the parties need additional time to prepare the settlement documentation:

> **When a case has been settled**, counsel shall promptly notify the Clerk and the Court, thereafter confirming the same in writing. Within 21 days of such notification, counsel shall file all papers necessary to terminate the case. Upon failure of counsel to do so, the Clerk shall prepare an order for submission to the Court dismissing the action, without costs, and without prejudice to the right to reopen the action within 60 days **upon good cause shown** if the settlement is not consummated.

(Emphasis supplied.) Here, after it became apparent that the settlement papers would take some time to prepare, on December 17, 2010, both parties jointly advised the Court that the matter had been resolved and they requested the entry of the 60-day order. (Anders Cert., Exhibit B.) In response to the parties' joint request, the Court acknowledged the settlement of the matter and entered a 60-day dismissal order on January 3, 2011. (Anders Cert., Exhibit C.) At no time prior

to the entry of this order did Mr. Mazawey contact the Court to advise that the matter was not settled. (Anders Cert., Exhibit H, Mazawey Tr. 40:20-25.) Moreover, Mr. Anders and Mr. Mazawey spoke regarding the terms of the settlement in this matter on December 30, 2010, and again on December 31, 2010. (Anders Cert., Exhibit G, Chesler Tr. 80:2-82:1; 98:17-25; Exhibit H, Mazawey Tr. 33:21-34:5.) At no time during either of these conversations did Mr. Mazawey state that there was no settlement. (Id.) (Anders Cert., Exhibit G, Chesler Tr. 105:24-106:3.)

The above conduct by the parties, without question, demonstrates that the parties had reached a binding and enforceable contract to settle this matter.

### 3.     The Absence Of A Fully Executed Written Settlement Agreement Does Not Prevent Enforcement Of The December 3, 2010 Settlement.

Following the parties' verbal agreement on December 3, 2010, the parties began the task of preparing formal settlement papers to memorialize the agreed-upon settlement. The United Water Defendants sent Plaintiffs' counsel a draft settlement agreement via e-mail on December 29, 2010. (Anders Cert., Exhibit D.) Plaintiffs' counsel responded the next day, December 30, 2010, to advise he had forwarded the draft agreement to his clients for their review and requested additional time for them to sign the agreement. (Anders Cert., Exhibit E.) This letter supports the existence of a settlement consistent with the terms set forth in the draft agreement.

On or about December 30, 2010, the United Water Defendants' counsel spoke with Plaintiffs' counsel and responded to a request by Plaintiffs' counsel concerning the manner and timing of the payment of the settlement proceeds (e.g., what portion would be paid upon the signing of the agreement and what portion would be paid upon Destro's retirement.) (Anders Cert., Exhibit G, Chesler Tr. 80:16-25.) At no time during this conversation did Plaintiffs' counsel ever advise that the draft settlement agreement was inconsistent with what was discussed

17

during the December 3, 2010 mediation. (Anders Cert., Exhibit G, Chesler Tr. 98:9-100:1.)

Thereafter, on January 6, 2011, Plaintiffs' counsel advised the United Water Defendants for the first time since the mediation that Plaintiffs no longer wished to settle the matter as Destro apparently decided that he no longer wished to retire in April 2011 and intended to return to work. (Anders Cert., Exhibit G, Chesler 20:12-21:1; 105:-12.) Plaintiffs' change of heart, however, is not a sufficient basis to void a binding agreement.

Under New Jersey law, where the parties agree upon the essential terms of a settlement, even if the mechanics are to be "fleshed out" in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact that the writing does not materialize prior to a party's later reneging. Bistricer v. Bistricer, 231 N.J. Super. 143, 145 (Ch. Div. 1987) (court held settlement was binding where parties orally agreed on the essential terms of settlement of the litigation and the terms were sufficiently clear for the settlement to be implemented fairly even though the parties were unable to agree on a written agreement to be executed); Comerata v. Chaumont, Inc., 52 N.J. Super. 299, 305-306 (App. Div. 1958) (holding parties may agree upon all essential terms of a contract and effectively bind themselves thereon even though they contemplate the later execution of a formal document to memorialize their undertaking); Lightman, 988 F. Supp. at 459. That is precisely what happened here. On December 3, 2010, the parties agreed to the essential terms of the agreement, while at the same time they understood the settlement would be memorialized at a later date in a written document. See Good v. Pennsylvania Railroad Co., 384 F.2d 989, 990 (3d Cir. 1967) (holding that an agreement to settle for an agreed amount is valid and binding despite the absence of any writing or formality). Importantly, Plaintiffs do not take issue with any of the material terms of the

settlement as set forth in the United Water Defendants' proposed agreement. Rather, this is simply a case where Plaintiffs wish to renege on their prior agreement.

**C.**     **There Is No Compelling Circumstance Warranting Rescission And Defendants Will Suffer Great Prejudice If Enforcement Is Not Mandated.**

The December 3, 2010 settlement is a binding contract which should be enforced absent fraud or other compelling circumstances. Nolan, 120 N.J. at 472. In this instance, Plaintiffs are unable to point to any fraud or other "compelling circumstance" sufficient to avoid the enforcement of the settlement agreement. To the contrary, the sole reason offered for Plaintiffs' refusal to abide by the oral agreement to settle this matter is Destro's apparent "buyer's remorse" concerning the settlement and his renewed desire to continue working.

Plaintiffs' change of heart, unsupported by anything other than their current displeasure with the terms of the settlement, specifically, the requirement that Destro retire from United Water, is not a compelling circumstance under the law, especially in light of the State's strong public policy. As the Appellate Division noted:

> A compromise is the end product of deliberation as to more than injury. It involves the skillful judgment of counsel as to liability and other factors inherent in [a lawsuit], his explanation of these and other hazards of litigation to the client and the client's recognition of them.[...] **If later reflection were the test of the validity of such an agreement, few contracts of settlement would stand.**

Pascarella, 190 N.J. Super. at 126 (emphasis added).

Moreover, to the extent Plaintiffs argue that there never was a settlement in the first place, the evidence in the record clearly demonstrates otherwise. Accordingly, the settlement agreed to by the parties should be enforced.

## CONCLUSION

For the foregoing reasons, the United Water Defendants' motion to enforce the parties' December 3, 2010 settlement should be granted. The sole issue before the Court is to determine whether an oral contract to settle the matter had been formed at the December 3, 2010 mediation. The crux of Plaintiffs' argument is that Mr. Mazawey verbally stated to everyone present at the final joint session at the mediation that there was "no deal." The United Water Defendants and the neutral mediator at present at the final joint session testified that an agreement was in fact reached and that neither Plaintiffs nor their counsel gave any indication to the contrary. As noted by Judge Chesler at the conclusion of the June 21, 2011 evidentiary hearing, "[s]omebody is lying." (Anders Cert., Exhibit G, Chesler Tr. 129:8-17.) The overwhelming weight of the evidence is supports the United Water Defendants' position that not only was an agreement reached, but that the terms of the agreement are definitive enough for the Court to enforce under well-established principles concerning the enforcement of agreements to resolve litigation.

Not only is the enforcement of the settlement legally appropriate, it is in Plaintiffs' best interest for the matter to be settled. As explained above, Plaintiffs had taken out a $200,000.00 mortgage to finance this litigation. (Anders Cert. Ex. N, Destro II Tr. 298:24-300:25; 469:11-471:19.) This is money that has already been spent prosecuting claims which are both legally and factually deficient. In fact, following the completion of Destro's deposition, it became clear that Plaintiffs' claims had no merit and were completely lacking in evidentiary support. As a result, on August 5, 2010, the United Water Defendants forwarded to Plaintiffs'

20

attorney a Rule 11 letter which explained in great detail the deficiencies in Plaintiffs' complaint and demanded that the complaint be withdrawn. (Anders Cert., Exhibit M.)  Plaintiffs refused to withdraw the complaint and, instead, have insisted on going forward with their claims. Therefore, in the event the Court grants the United Water Defendants' motion for summary judgment, not only are Plaintiffs out-of-pocket at least $200,000.00 for the fees they paid to their counsel, but they may be liable to the United Water Defendants under Rule 11.  As such, the very real possibility exists that as a result of bringing this lawsuit, Plaintiffs will find themselves in a much worse position financially than if they had never filed the lawsuit in the first place.

The settlement that the United Water Defendants seek to enforce is a very good deal for Plaintiffs.  It allows Plaintiffs to put this matter behind them and pay off the mortgage which they used to finance their ill-conceived lawsuit.  It permits Destro to retire without the burden of a $200,000.00 mortgage (which Destro testified would prevent him from retiring in the first place) (Anders Cert., Ex. G, Chesler Tr. 10:21-11:14; Exhibit N, Destro II Tr. 298:24-300:25; 469:11-471:19.), and without the potential risk of sanction pursuant to Rule 11.

We thank the Court for its consideration of the above.

Respectfully submitted,

JACKSON LEWIS LLP
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, New Jersey 07960-6844
(973) 538-6890

By:        /s Brett M. Anders
          Brett M. Anders
          Joseph C. Toris

          ATTORNEYS FOR DEFENDANTS
          UNITED   WATER   NEW   JERSEY   INC.
          (IMPROPERLY PLED AS "HACKENSACK

21

WATER COMPANY, UNITED WATER RESOURCES COMPANY, UNITED WATER RESOURCES COMPANY-NEW JERSEY, UNITED WATER-SUEZ INC. AND UNITED WATER INC.") JOHN MENZEL, MIKE LEAHY, JACK POLK, ROBERT IACULLO, CHARLES WALL AND ANTHONY HARDING

Dated: November 30, 2012

4814-4520-3217, v. 3

22